McBRIDE, Judge.
This is an appeal taken by defendants from a judgment in plaintiff’s favor and against them for $572.70. Plaintiff’s claim is based on the averment that there was a shortage in weight in two carloads of scrap *838 iron which had been purchased from defendants and paid for by plaintiff before or at the time of delivery.
Gondola car LA 9437, which was delivered to plaintiff on December 4, 1956, was represented by defendants to contain 89,500 pounds of scrap for which plaintiff paid $51 per ton. However, the car contained 80,020 pounds of scrap and 9,480 pounds of debris, consisting of dirt, iron rust and scale, and the trial judge allowed plaintiff $229.49 for the shortage of 9,480 pounds in the weight of the scrap, less however, a credit of $87 which represented the weight of rain water which was included in the 9,480 pounds of foreign matter.
The allowance made for the shortage in said car is correct. The testimony of three witnesses appearing for plaintiff established the presence of the foreign matter, and after the scrap had been unloaded, the car was light weighed in order to determine the weight of the foreign matter contained therein. One of the witnesses stated a railroad car has its weight stenciled on the side thereof and that cars are weighed periodically by the carriers. Railroad cars, and particularly gondolas, carry all manner of materials, such as sand, gravel, iron, et cetera, and usually the carriers do not clean residue from the cars; and this being so, a cargo residue would make a material difference when calculating the weight of the contents of the car when next loaded. Therefore, it is customary to weigh freight cars before loading or after the unloading to ascertain the actual tare weight thereof which sometimes is at variance with the posted tare. This is called light weighing. Plaintiff paid defendants for the scrap based on the difference in weight as between the marked tare and the actual weight of the loaded car, and in order to compute the weight of the foreign matter plaintiff proceeded to have car LA 9437 light weighed after the-scrap was removed, and the difference between the then actual .weight of the car and the marked tare was accepted as the amount of foreign matter and the shortage existing in the scrap.
A weigh master for Public Belt Railroad testified he weighed the gondola after the unloading, and as appears from certified weight tickets, there was a difference between the actual tare and the marked tare of 9,480 pounds, which at $51 per ton would aggregate $229.49. However, the evidence showed that as the result of heavy rains there was a considerable amount of water in car LA 9437, the depth of which is said to have been two and one-half inches. The weight of the water was mathematically calculated by one of the witnesses to be 3,600 pounds, and taking that into consideration it is obvious plaintiff’s claim was subject to a reduction of $87 and defendants were allowed such credit.
Defendants have only one complaint to make insofar as car LA 9437 is concerned, and that is that defendant Lomm was not given an opportunity to inspect the car after plaintiff had unloaded the scrap. This can hardly be considered a serious defense, because uncontradicted testimony establishes with certainty the amount of the shortage, and had an inspection been made by said defendant, the result could not possibly have been changed.
The claim relating to car IC 95,478, which arrived on December 5, 1956 is of the same character, being based on the presence of dirt and other foreign matter in the car which was first noticed while the scrap was in the process of being unloaded. Plaintiff’s superintendent suspended unloading operations when the job was about two-thirds completed for the reason he desired his superiors to know of the condition of the car. Lomm was also summoned to the scene and he had his representative, Pailet, examine the car, and they conceded there was a certain amount of debris therein. The unloading was then resumed and Pailet later in the afternoon of the same day made another inspection after the unloading had been completed, and he then contended that plaintiff had not fully unloaded the car as some scrap still remained therein along with the debris. As to this circumstance we are convinced that only small pieces of scrap *839 were still in the car and this for the reason the magnet used in unloading did not catch them. But, be that as it may, the amount of scrap which was not unloaded is insignificant and need not be considered.
Plaintiff was to receive 149,700 pounds in car IC 95,478, for which it paid $56 per ton. Plaintiff attempted to show that after the scrap was unloaded, tl}^ car was light weighed with the result that the shortage in the weight of the scrap was shown to be 17,260 pounds. The trial judge allowed plaintiff $430.21 therefor.
Defendants maintain, and we think validly so, that the light weighing was irregular and not made at such time as to constitute the basis for computing the extent of the shortage. As stated above, car IC 95,478 was delivered December 5, 1956, but the weigh master of the Southern Railway testified that the light weighing took place on November 24, 1956, or 11 days before the delivery. The certificate of track scale weight is dated December 5, 1956, but it clearly sets forth that the weighing was done on November 24, 1956, as was testified to by the weigh master. Had there been a discrepancy as between the testimony of the witness and the recital in the certificate relative to the date on which the car had been weighed, we might say the witness was inadvertently in error, but whereas the documentary evidence conforms with the testimony, we cannot possibly say, without assuming to be arbitrary, there was error in the date. The result of the light weighing of the car 11 days before plaintiff received delivery thereof is of no value whatever in the determination of the shortage and we think the trial judge should not have allowed plaintiff the $430.-21.
There is in the record, however, evidence which we think can be utilized as the basis for an allowance to plaintiff for the shortage in weight of the shipment in car IC 95,478. Pailet testified he estimated the weight of the foreign matter at 6,000 pounds, and he further stated that two representatives of plaintiff estimated it at 7,-000 and 8,000 pounds respectively. One of plaintiff’s witnesses did say he thought at the time that his figure was 7,000 pounds. We feel fully justified under the circumstances in accepting the mean average of 7,000 pounds as evidencing the shortage in weight. At the rate of $56 per ton plaintiff would be entitled to $196 in connection with car IC 95,478.
The judgment should be for $338.49, and it is ordered, adjudged and decreed that the amount thereof be reduced to that sum, and as thus amended and in all other respects the judgment is affirmed. Plaintiff is to pay the costs of this appeal.
Amended and Affirmed.